IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE

DISTRICT OF ALABAMA, NORTHERN DIVISION

FILED

MAR 1 7 1965

R. C. DOBSON
Clerk

By ................................
Deputy Clerk

HOSEA WILLIAMS, JOHN LEWIS )
and AMELIA BOYNTON, on behalf )
of themselves and others )
similarly situated; )
)
              Plaintiffs, )
)
UNITED STATES OF AMERICA; )
)
        Plaintiff-Intervenor, )
)
        vs. )
)
HONORABLE GEORGE C. WALLACE, as )
Governor of the State of Alabama; )
AL LINGO, as Director of Public )
Safety for the State of Alabama; )
and JAMES G. CLARK, as Sheriff of )
Dallas County, Alabama, )
)
        Defendants. )

CIVIL ACTION NO. 2181-N

## MEMORANDUM OPINION

    The plaintiffs as Negro citizens and the members of the class they represent filed with this Court on March 8, 1965, their complaint, motion for temporary restraining order and motion for a preliminary injunction. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and (4). This action, authorized by 42 U.S.C. § 1971(a) and (b) as amended and 42 U.S.C. §§ 1981 and 1983, seeks relief from the denial of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and seeks redress of the deprivation of rights, privileges and immunities guaranteed by the First, Fourteenth and Fifteenth Amendments to the Constitution of the United States, as implemented by the above-identified Congressional enactments. On March 10, 1965, the United States of America, by leave of this Court, filed its complaint in intervention. This intervention complaint was filed pursuant to an order of this Court designating the United States as a party and pursuant to the provisions of § 902 of the Civil Rights Act of 1964 (Public Law 88-352, July 2, 1964). The Attorney General of the United States certifies that this case is of general importance, and his certificate is attached to the intervention complaint.

    The defendant George C. Wallace is the Governor and chief executive officer of the State of Alabama. The defendant Albert J. Lingo is the Director

of Public Safety of the State of Alabama, and the defendant James G. Clark,
Jr., is the Sheriff of Dallas County, Alabama. The Governor as the chief
executive officer of the State of Alabama is charged with the faithful
execution of the laws of the State of Alabama and of the United States of
America; in such capacity, the Governor controls and supervises the defendant
Albert J. Lingo, and through the defendant Lingo the Governor controls and
directs the activities of the Alabama Highway Patrol, also known as the Alabama
State Troopers. The defendant Lingo as director is in the active control of
the Alabama Highway Patrol.

The plaintiffs seek to have this Court guarantee their right to
assemble and demonstrate peaceably for the purpose of redressing their
grievances concerning the right to register to vote in the State of Alabama
without unlawful interference. Included in the rights plaintiffs seek and
ask this Court to adjudicate is that of walking peaceably along the public
highway in the State of Alabama between Selma and Montgomery. Plaintiffs
also ask this Court to enjoin and restrain the defendants and all persons act-
ing in concert with them from arresting, harassing, threatening, or in any
way interfering with their peaceful, nonviolent march from Selma, Alabama,
to Montgomery, Alabama, for the purpose of protesting injustices and petition-
ing their State government, particularly the chief executive officer--the
Governor--for redress of grievances.

By order made and entered in this case on March 9, 1965, this Court
denied the plaintiffs' application for a restraining order, which was sought
without any notice to the defendants and without a hearing. At the same time,
upon being informed that the plaintiffs intended to continue to attempt their
mass marching along the public highway of the State of Alabama between Selma
and Montgomery before this Court had had an opportunity to adjudicate the
respective rights of the parties, this Court entered an order temporarily
restraining any further attempts on the part of the plaintiffs to enforce the
rights they ask this Court to judicially determine until the matter could be
heard commencing Thursday, March 11, 1965. Plaintiffs were restrained by this
Court pursuant to the authority of Title 28, § 1651, United States Code, with
the purpose of the temporary restraining order being necessary and appropriate
in aid of this Court's jurisdiction. [1] Issue was joined by the defendants upon

---

1/ See next page.

plaintiffs' and plaintiff-intervenor's complaints, with the defendant Governor Wallace, in addition to joining issue, asking this Court to enjoin and restrain the plaintiffs and other members of their class from continuing any march or mass demonstration along or upon U. S. Highway 80 between Selma, Alabama, and Montgomery, Alabama, or along or upon any other public highway within the State of Alabama.

This submission is upon the pleadings, the testimony of numerous witnesses taken over a period of four and one-half days, and the several exhibits offered and admitted in connection with that testimony.  Upon this submission, this Court now proceeds in this memorandum opinion to make appropriate findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

Under Alabama law, registration is prerequisite to voting in any election.  In several counties in central Alabama, including Dallas County wherein Selma, Alabama, is located, fewer than 10% of the Negroes of voting age are registered to vote. [2] For the purpose of obtaining better political representation for Negro citizens in these counties, the Negro communities, through local and national organizations, have conducted voter registration drives in recent years.  These voter registration drives in Dallas and other central Alabama counties have been intensified since September, 1964.  Public demonstrations have been held in these several counties, particularly in Dallas County, for the purpose of encouraging Negroes to attempt to register to vote and also for the purpose of protesting discriminatory voter registration practices in Alabama.  The demonstrations have been peaceful.  At the same time, cases have been filed in the United States District Courts in this district [3] and also in the Southern District of Alabama; [4] these cases are

---

[1] This temporary restraining order, being designed only to protect this Court's jurisdiction, pending a hearing and adjudication of the rights of the parties, has served its purpose with the filing of this order, and, therefore, expires.

[2] See Appendix "A" for registration statistics compiled for Dallas, Perry, Wilcox, Hale, Choctaw and Marengo Counties.  As to Lowndes County, the evidence reflects that no Negroes are registered to vote although the Negro population in Lowndes County is considerably in excess of 50% of the total population of that county.

[3] United States v. Penton (for Montgomery County), 212 F. Supp. 193 (1962);

[4] See next page.                                                                (Contd.)

designed to secure to Negro citizens their right to register to vote in several central Alabama counties.

As reflected by Appendix "A" to this opinion, the efforts of these Negro citizens to secure this right to register to vote in some of these counties, have accomplished very little. For instance, in Dallas County, as of November, 1964, where Negro citizens of voting age outnumber white citizens of voting age, only 2.2% of the Negroes were registered to vote. In Perry County as of August, 1964, where the Negro citizens of voting age outnumber white citizens, only 7% of the Negroes were registered to vote. In Wilcox County as of December, 1963, where the Negro citizens of voting age outnumber white citizens over two to one, 0% of the Negro citizens were registered to vote as contrasted with the registration of 100% of the white citizens of voting age in this county. In Hale County, where Negro citizens of voting age outnumber white citizens, only 3.6% of these Negro citizens have been registered to vote. The evidence in this case reflects that, particularly as to Selma, Dallas County, Alabama, an almost continuous pattern of conduct has existed on the part of defendant Sheriff Clark, his deputies, and his auxiliary deputies known as "possemen" of harassment, intimidation, coercion, threatening conduct, and, sometimes, brutal mistreatment toward these plaintiffs and other members of their class who were engaged in their demonstrations for the purpose of encouraging Negroes to attempt to register to vote and to protest discriminatory voter registration practices in Alabama. This harassment, intimidation and brutal treatment has ranged from mass arrests without just cause to forced marches for several miles into the countryside, with the sheriff's deputies and members of his posse herding the Negro demonstrators at a rapid pace through the use of electrical shocking devices (designed for use on cattle) and night sticks to prod them along. The Alabama State Troopers, under the command of the defendant Lingo, have, upon several

---

3/ (Contd.) United States v. State of Alabama (for Macon County), 171 F. Supp. 720 (1959), 267 F. 2d 808, vacated and remanded 362 U.S. 602; United States v. State of Alabama (for Bullock County), Civil Action No. 1677-N, Sept. 3, 1961; United States v. Cartwright (for Elmore County),230 F. Supp. 873 (1964).

4/ United States v. Atkins (concerning Dallas County), 210 F. Supp. 441, reversed, 5th Cir., 323 F. 2d 733, and United States v. Mayton (relating to Perry County), 335 F. 2d 153.

-4-

occasions, assisted the defendant Sheriff Clark in these activities, and the State troopers, along with Sheriff Clark as an "invited guest," have extended the harassment and intimidating activities into Perry County, where, on February 18, 1965, when approximately 300 Negroes were engaged in a peaceful demonstration by marching from a Negro church to the Perry County Courthouse for the purpose of publicly protesting racially discriminatory voter registration practices in Perry County, Alabama, the Negro demonstrators were stopped by the State troopers under the command of the defendant Lingo, and the Negro demonstrators were at that time pushed, prodded, struck, beaten and knocked down. This action resulted in the injury of several Negroes, one of whom was shot by an Alabama State Trooper and subsequently died.

In Dallas County, Alabama, the harassment and brutal treatment on the part of defendants Lingo and Clark, together with their troopers, deputies and "possemen," and while acting under instructions from Governor Wallace, reached a climax on Sunday, March 7, 1965. Upon this occasion approximately 650 Negroes left the church in Selma, Alabama, for the purpose of walking to Montgomery, Alabama, to present to the defendant Governor Wallace their grievances concerning the voter registration processes in these central Alabama counties and concerning the restrictions and the manner in which these restrictions had been imposed upon their public demonstrations. These Negroes proceeded in an orderly and peaceful manner to a bridge near the south edge of the City of Selma on U. S. Highway 80 that leads to Montgomery, Alabama, which is located approximately 45 miles east of Selma. They proceeded on a sidewalk across the bridge and then continued walking on the grassy portion of the highway toward Montgomery until confronted by a detachment of between 60 to 70 State troopers headed by the defendant Colonel Lingo, by a detachment of several Dallas County deputy sheriffs, and numerous Dallas County "possemen" on horses, who were headed by Sheriff Clark. Up to this point the Negroes had observed all traffic laws and regulations, had not interfered with traffic in any manner, and had proceeded in an orderly and peaceful manner to the point of confrontation. They were ordered to disperse and were given two minutes to do so by Major Cloud, who was in active command of the troopers and who was acting upon specific instructions from his superior officers. The Negroes failed to disperse, and within approximately

one minute (one minute of the allotted time not having passed), the State
troopers and the members of the Dallas County sheriff's office and "possemen"
moved against the Negroes. The general plan as followed by the State
troopers in this instance had been discussed with and was known to Governor
Wallace. The tactics employed by the State troopers, the deputies and "posse-
men" against these Negro demonstrators were similar to those recommended for
use by the United States Army to quell armed rioters in occupied countries.
The troopers, equipped with tear gas, nausea gas and canisters of smoke,
as well as billy clubs, advanced on the Negroes. Approximately 20 canisters
of tear gas, nausea gas, and canisters of smoke were rolled into the Negroes
by these State officers. The Negroes were then prodded, struck, beaten and
knocked down by members of the Alabama State Troopers. The mounted "posse-
men," supposedly acting as an auxiliary law enforcement unit of the Dallas
County sheriff's office, then, on their horses, moved in and chased and beat
the fleeing Negroes. Approximately 75 to 80 of the Negroes were injured, with
a large number being hospitalized.

The acts and conduct of these defendants, together with the
members of their respective enforcement agencies, as outlined above, have
not been directed toward enforcing any valid law of the State of Alabama or
furthering any legitimate policy of the State of Alabama, but have been for
the purpose and have had the effect of preventing and discouraging Negro
citizens from exercising their rights of citizenship, particularly the right
to register to vote and the right to demonstrate peaceably for the purpose of
protesting discriminatory practices in this area. By these actions and by
this conduct, the defendants, together with other members of their enforcement
agencies, have intimidated, threatened and coerced Negro citizens in this
section of Alabama for the purpose of interfering with these citizens and
preventing them from exercising certain of their basic constitutional rights--
i.e., the right to register to vote, peaceably assemble, remonstrate with
governmental authorities and petition for redress of grievances. The attempted
march alongside U.S. Highway 80 from Selma, Alabama, to Montgomery, Alabama,
on March 7, 1965, involved nothing more than a peaceful effort on the part
of Negro citizens to exercise a classic constitutional right; that is, the
right to assemble peaceably and to petition one's government for the redress

of grievances. Cox v. Louisiana (Jan. 18, 1965),___U.S.___, 85 S. Ct.
453; Edwards v. South Carolina, 372 U.S. 229 (1963); Fields v. South Carolina,
375 U.S. 44 (1963) (reversing State v. Fields, 240 S.C. 366, 127 S.E. 2d 6
on the basis of Edwards v. South Carolina); Kelly v. Page, 335 F. 2d 114
(C.A. 5, 1964); Young v. Davis, 9 RRLR 590 (M.D. Fla. 1964), including the
right to come to the capitol of the government against which the grievances
exist, "to assert any claim . . . [one] may have upon that government," and
"to seek its protection" (Crandall v. Nevada, 6 Wall. 35, 44 (1867)), and
the right -- part of the "liberty" of which the citizen cannot be deprived
without due process of law -- to travel freely within the country, Kent v.
Dulles, 357 U.S. 116, 125-126 (1958); Edwards v. California, 314 U.S. 160,
177-181 (1941) (concurring opinion of Mr. Justice Douglas); Williams v. Fears,
179 U.S. 270, 274 (1900); Crandall v. Nevada, 6 Wall. 35, 44 (1867); Passenger
Cases, 7 How. 282, 492 (1849).

    The law is clear that the right to petition one's government for
the redress of grievances may be exercised in large groups. Indeed, where,
as here, minorities have been harassed, coerced and intimidated, group
association may be the only realistic way of exercising such rights. For
instance, in Edwards v. South Carolina, supra, the Supreme Court of the United
States invalidated as an infringement of the rights of free speech, free
assembly and freedom to petition, the convictions of 187 students who had
peaceably assembled at the site of the state government for the purpose of
petitioning their government for redress of grievances. In Fields v. South
Carolina, supra, breach-of-peace convictions were struck down where students had
protested by marching along the streets in three groups totaling approximately
1,000; this march was for the purpose of petitioning for the redress of
grievances. And in the more recent case of Cox v.Louisiana, supra, the
Supreme Court invalidated the breach-of-peace conviction against the leader
of a march of some 1,500 to 2,000 students on the Louisiana State Capitol
Building, the purpose of the march being to protest segregation and discrimi-
nation against Negro citizens.

    This Court recognizes, of course, that government authorities have
the duty and responsibility of keeping their streets and highways open and
available for their regular uses. Government authorities are authorized

to impose regulations in order to assure the safety and convenience of the people in the use of public streets and highways provided these regulations are reasonable and designed to accomplish that end. As to any conflict that may arise in such areas, the Fifth Circuit Court of Appeals has stated in Kelly v. Page, 335 F. 2d 114 (July 1964), "there is room in our system of government for both, once the proper balance between them is drawn." As has been demonstrated above, the law in this country constitutionally guarantees that a citizen or group of citizens may assemble and petition their government, or their governmental authorities, for redress of their grievances even by mass demonstrations as long as the exercise of these rights is peaceful. These rights may also be exercised by marching, even along public highways, as long as it is done in an orderly and peaceful manner; and these rights to assemble, demonstrate and march are not to be abridged by arrest or other interference so long as the rights are asserted within the limits of not unreasonably interfering with the exercise of the rights by other citizens to use the sidewalks, streets and highways, and where the protesters and demonstrators are conducting their activities in such a manner as not to deprive the other citizenry of their police protection. As was stated in Kelly v. Page, supra, there must be in cases like the one now presented, a "constitutional boundary line" drawn between the competing interests of society. This Court has the duty and responsibility in this case of drawing the "constitutional boundary line." In doing so, it seems basic to our constitutional principles that the extent of the right to assemble, demonstrate and march peaceably along the highways and streets in an orderly manner should be commensurate with the enormity of the wrongs that are being protested and petitioned against. In this case, the wrongs are enormous. The extent of the right to demonstrate against these wrongs should be determined accordingly. This is true even though it is recognized that the right to exercise constitutional rights by marching alongside a public highway must be narrow in the sense that such a right is subject to greater regulation and in the sense that greater abridgement of the right may, depending upon the circumstances, be warranted. This Court is, of course, concerned in this case only with the right to demonstrate and protest by marching along the public highway from Selma, Alabama to Montgomery, Alabama.

U. S. Highway 80, running between these two points, is not a limited access
highway; it is a four-laned highway for approximately two-thirds of the
distance between Selma and Montgomery, Alabama; it is a two-laned highway
for the remaining distance.  There is an average "shoulder" six feet wide
on each side of the highway that is four-laned; there is an average three-
foot "shoulder" along that portion of the highway that is two-laned.  Cross-
overs are regularly constructed or located along the portion that is four-
laned.  This highway, according to the law of the State of Alabama, is open
for pedestrian traffic. [5/]  Thus, a reasonable use of the highways for the
purpose of pedestrian marching is guaranteed not only by the Constitution
of the United States according to the principles above set out, but is
specifically authorized by the law of the State of Alabama.  The proclamation
as issued by the Governor of the State of Alabama on March 6, 1965, absolutely
banning any march by any manner--regardless of how conducted--and stating
that such a march will not be tolerated, constituted an unreasonable inter-
ference with the right of Negro citizens engaged in the march to use U. S.
Highway 80 in the manner they were seeking to use it on Sunday, March 7,
1965.  Such a proclamation by the Governor of the State of Alabama, as
enforced by the Alabama State Troopers and deputies and "possemen" of Dallas
County, Alabama, stepped across the "constitutional boundary line" that lies
between the interests of the public to use the highway in general and the
right of American citizens to use it for the purpose of marching to the
seat of their State government--Montgomery, Alabama--for the purpose of
protesting their grievances.  This interference by the defendants and those
acting under their control and in concert with them with the attempted march
from Selma, Alabama, to Montgomery, Alabama, along U. S. Highway 80 on March
7, 1965, constituted an unconstitutional deprivation of these Negro citizens'
right of assembly and free movement within the State of Alabama along a public
highway located therein and their right to petition their State government,
and particularly their Governor, for redress of their grievances.

---

5/  Code of Alabama, Title 36, § 58(19) (b): "Where sidewalks are not provided
any pedestrian walking along and upon a highway shall when practicable walk
only on the left side of the roadway or its shoulder facing traffic which may
approach from the opposite direction."

These plaintiffs, in recognition of the proposition that their constitutional right to march along U. S. Highway 80 for their intended purposes is not an unrestricted right, but, to the contrary, must be exercised, if exercised at all, within this "constitutional boundary," have filed with this Court as a part of the evidence in this case a proposed plan for a march from Selma, Alabama, to Montgomery, Alabama, along U. S. Highway 80. These plaintiffs propose that the march will commence on Friday, March 19, 1965, at 10:30 a.m., or any day thereafter provided that plaintiffs give at least 48 hours' advance notice of the intended march to the defendants, to the United States, and to this Court. The plaintiffs propose that there be no limitation on the number of marchers along that portion of U. S. Highway 80 that is four-laned; the plaintiffs further propose that, along that portion of the highway that is only two-laned, the number of marchers will not at any time exceed 300 persons. The plaintiffs further propose that the marchers will proceed on the shoulders of the highway on the left side facing traffic; they will proceed two abreast, but will employ a single file at places along the highway where the shoulder is narrow and at bridges without sidewalks. The marchers will, according to the proposed plan, be organized in separate groups of approximately 50 persons; each of these groups will be under the supervision of a designated leader. Supporting services will be provided, such as food, washing and toilet facilities, litter and garbage pickup by trucks along the route and at campsites, and ambulance and first aid service. The proposed march, according to plaintiffs' plan, will proceed approximately 11 miles on the first day, stopping at a designated private field with permission of the owner, which has already been granted; approximately 11 miles on the second day, stopping at a designated field with permission of the owner, which has already been granted; approximately 17 miles the third day, stopping at a designated building and adjacent field with permission of the owners, which has already been granted, and, on the fourth day, approximately 8 miles to the western part of Montgomery, Alabama. The fifth day's march, as proposed by the plaintiffs, will be from the western part of Montgomery, Alabama, to the State Capitol. According to the plaintiffs' plan, large tents will be erected at the campsites by professionals, and meetings and song festivals will be held at the

campsites at night. There will be no night marching and no destruction of public property; the march is to be orderly and peaceful and "otherwise observe the highest standards of dignity and decorum." A copy of the plaintiffs' plan, in much greater detail, is attached hereto as Appendix "B".

This Court finds the plaintiffs' proposed plan to the extent that it relates to a march along U.S. Highway 80 from Selma to Montgomery, Alabama, to be a reasonable one to be used and followed in the exercise of a constitutional right of assembly and free movement within the State of Alabama for the purpose of petitioning their State government for redress of their grievances. It is recognized that the plan as proposed and as allowed reaches, under the particular circumstances of this case, to the outer limits of what is constitutionally allowed. However, the wrongs and injustices inflicted upon these plaintiffs and the members of their class (part of which have been herein documented) have clearly exceeded--and continue to exceed--the outer limits of what is constitutionally permissible. As stated earlier in this opinion, the extent of a group's constitutional right to protest peaceably and petition one's government for redress of grievances must be, if our American Constitution is to be a flexible and "living" document, found and held to be commensurate with the enormity of the wrongs being protested and petitioned against. This is particularly true when the usual, basic and constitutionally-provided means of protesting in our American way--voting--have been deprived.[6] It must never be forgotten that our Constitution is "intended to endure for ages to come, and consequently, to be adapted to the various crises of human affairs."[7] With an application of these principles to the facts of this case, plaintiffs' proposed plan of march from Selma to Montgomery, Alabama, for its intended purposes, is clearly a reasonable exercise of a right guaranteed by the Constitution of the United States provided the march commences not earlier than March 19, 1965, and not later than March 22, 1965.

It is appropriate to note here that the defendants, having been

---

6/ Examples as to the systematic and very effective deprivations of voting rights to Negro citizens in this area are demonstrated by Appendix "A" to this opinion. As to the methods used to accomplish this, see this Court's findings in United States v. State of Alabama, 171 F. Supp. 720, and United States v. Penton, 212 F. Supp. 193. The Courts have recognized that in the field of racial discrimination statistics such as those set out in Appendix "A" tell the basic story. United States v. State of Mississippi, 229 F. Supp. 925; State of Alabama v. United States (5th Cir. 1962), 304 F. 2d 583, aff'd 371 U.S. 37; United States v. Edwards (5th Cir. 1964), 333 F. 2d 575.

7/ See next page.

served through their attorneys with copies of this plan, object to it, but offer no evidence in support of their contention that the plan, or any portion of it, is unreasonable. The defendants' contention that there is some hostility to this march will not justify its denial. <u>Watson</u> v. <u>City of Memphis</u> (1963), 373 U.S. 526; <u>Cox</u> v. <u>Louisiana</u>, supra. Nor will the threat of violence constitute an excuse for its denial. <u>Cooper</u> v. <u>Aaron</u> (1958), 358 U.S. 1.

It is also appropriate to note that neither the defendant Governor Wallace nor the defendant Sheriff Clark testified in this case.

These plaintiffs and the members of the class they represent are entitled to police protection in the exercise of this constitutional right to march along U. S. Highway 80 from Selma to Montgomery, Alabama. <u>Hague</u> v. <u>C.I.O.</u> (1939), 307 U.S. 496; <u>Kelly</u> v. <u>Page</u> (5th Cir. 1964), 335 F. 2d 114; <u>Downie</u> v. <u>Powers</u> (10th Cir. 1951), 193 F. 2d 760; <u>United States</u> v. <u>Klans</u> (M.D. Ala., 1961), 194 F. Supp. 897. They are entitled to be protected by the law enforcement agencies of the State of Alabama against traffic and other hazards. This Court recognizes that, to afford the necessary protection for these marchers, there will be a considerable burden imposed upon the law enforcement agencies of the State of Alabama. Recognizing this, and recognizing the absolute necessity for providing this protection, this Court, after inquiry, has been informed by the attorneys representing the United States in this case that the United States Government stands ready, if requested by the Governor of the State of Alabama, to assist in providing police protection for this proposed march. This response to this Court's inquiry has been made with full recognition that the law imposes this duty upon the State of Alabama to provide this protection. This offer on the part of the United States to assist if requested is not--whether the offer is accepted or refused--to be construed as lessening the duty on the part of the State of Alabama law enforcement agencies to afford this protection.

What has been said in this opinion is not intended to declare or adjudicate the rights of citizens to assemble, petition, or protest within the City of Selma, Alabama, the City of Montgomery, Alabama, or any other municipal area since the exercise of such rights in each instance

---

7/  Mr. Chief Justice Stone in <u>Opp Cotton Mills, Inc.</u> v. <u>Adm'r. of Wage and Hour Div.</u> (1941), 312 U.S. 126, quoting Mr. Chief Justice Marshall in <u>McCulloch</u> v. <u>Maryland</u> (1819), 4 Wheat. 316.

must be determined according to the facts and circumstances presented.

In accordance with the foregoing, an injunction will be issued by this Court enjoining the Governor of the State of Alabama, George C. Wallace; the Director of Public Safety for the State of Alabama, Albert J. Lingo; and the Sheriff of Dallas County, Alabama, James G. Clark, Jr., together with their agents, employees, successors in office, and all those in active concert or participation with them, from intimidating, threatening, coercing or interfering with the proposed march by these plaintiffs and other members of their class along U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama. Said defendants will also be enjoined from failing to provide adequate police protection to these plaintiffs in their exercise of this constitutional right. The motion of the defendant Governor for an injunction restraining the march will be denied. All relief sought by the plaintiffs in their motions and the United States in its motions except as herein specifically referred to, will be denied.

Done, this the 17th day of March, 1965.

/s/ Frank M. Johnson, Jr.

UNITED STATES DISTRICT JUDGE

APPENDIX "A"

Dallas County, Alabama

Registration Statistics
(November 1964)

|        | Persons of Voting Age | Persons Registered | Percent Registered |
|--------|----------------------|--------------------|--------------------|
| White  | 14,400               | 9,542              | 66.3               |
| Negro  | 15,115               | 335                | 2.2                |

## DALLAS COUNTY STATISTICS

| Year 1961 | | Total Applied W | N | Accepted W | N | Rejected W | N | Percent Rejected W | N |
|---|---|---|---|---|---|---|---|---|---|
| June | W | 12 | | 10 | | 2 | | 16 | |
|  | N | | ¡3 ½ | | 2 | | 11 | | 84 |
| July | W | 13 | | 12 | | 1 | | 7.7 | |
|  | N | | 4 | | 4 | | 0 | | 0 |
| August | W | 9 | | 8 | | 1 | | 11 | |
|  | N | | 12 | | 7 | | 5 | | 41 |
| Sept. | W | 10 | | 9 | | 1 | | 10 | |
|  | N | | 19 | | 11 | | 8 | | 42 |
| Oct. | W | 30 | | 28 | | 2 | | 7 | |
|  | N | | 19 | | 14 | | 5 | | 27 |
| Nov. | W | 45 | | 43 | | 2 | | 4 | |
|  | N | | 29 | | 18 | | 11 | | 38 |
| Dec. | W | 15 | | 13 | | 2 | | 13 | |
|  | N | | 4 | | 3 | | 1 | | 25 |
| **1962** | | | | | | | | | |
| Jan. | W | 158 | | 144 | | 14 | | 9 | |
|  | N | | 5 | | 4 | | 1 | | 20 |
| Feb. | W | 128 | | 115 | | 13 | | 10 | |
|  | N | | 3 | | 2 | | 1 | | 33 |
| March | W | 33 | | 30 | | 3 | | 9 | |
|  | N | | 3 | | 2 | | 1 | | 33 |
| April | W | 15 | | 13 | | 2 | | 13 | |
|  | N | | 4 | | 3 | | 1 | | 25 |
| May | W | 6 | | 6 | | 0 | | 0 | |
|  | N | | 2 | | 1 | | 1 | | 50.0 |
| June | W | 3 | | 3 | | 0 | | 0 | |
|  | N | | 2 | | 1 | | 1 | | 50.0 |

| Year 1962 | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| July | W | 9 | | 9 | | 0 | | 0 | |
| | N | | 10 | | 5 | | 5 | | 50.0 |
| August | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 2 | | 0 | | 2 | | 100.0 |
| Sept. | W | 9 | | 8 | | 1 | | 11.1 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| Oct. | W | 16 | | 16 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| Nov. | W | 14 | | 13 | | 1 | | 7.1 | |
| | N | | 3 | | 2 | | 1 | | 33.3 |
| Dec. | W | 5 | | 3 | | 2 | | 40 | |
| | N | | 2 | | 0 | | 2 | | 100.0 |
| 1963 | | | | | | | | | |
| Jan. | W | 73 | | 59 | | 14 | | 19.2 | |
| | N | | 3 | | 1 | | 2 | | 66.7 |
| Feb. | W | 21 | | 12 | | 9 | | 42.8 | |
| | N | | 14 | | 7 | | 7 | | 50.0 |
| March | W | 9 | | 7 | | 2 | | 22.2 | |
| | N | | 17 | | 0 | | 17 | | 100.0 |
| April | W | 5 | | 2 | | 3 | | 60.0 | |
| | N | | 17 | | 0 | | 17 | | 100.0 |
| May | W | 29 | | 16 | | 13 | | 44.8 | |
| | N | | 31 | | 1 | | 30 | | 96.8 |
| June | W | 45 | | 31 | | 14 | | 31.1 | |
| | N | | 41 | | 6 | | 35 | | 85.4 |
| July | W | 69 | | 52 | | 17 | | 24.6 | |
| | N | | 38 | | 7 | | 31 | | 81.6 |

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| 1963 | | W | N | W | N | W | N | W | N |
| August | W | 33 | | 21 | | 12 | | 36.7 | |
| | N | | 64 | | 7 | | 57 | | 89.0 |
| Sept. | W | 42 | | 34 | | 8 | | 19.0 | |
| | N | | 7 | | 1 | | 6 | | 85.7 |
| Oct. | W | 296 | | 219 | | 77 | | 26.0 | |
| | N | | 215 | | 11 | | 204 | | 94.9 |
| Nov. | W | 115 | | 78 | | 37 | | 32.2 | |
| | N | | 55 | | 4 | | 51 | | 92.7 |
| Dec. | W | 46 | | 42 | | 4 | | 8.7 | |
| | N | | 20 | | 3 | | 17 | | 85.0 |
| 1964 | | | | | | | | | |
| Jan. | W | 246 | | 197 | | 49 | | 19.9 | |
| | N | | 54 | | 15 | | 39 | | 72.2 |
| Feb. | W | 22 | | 16 | | 6 | | 27.3 | |
| | N | | 27 | | 1 | | 26 | | 96.3 |
| March | W | 31 | | 26 | | 5 | | 16.1 | |
| | N | | 12 | | 2 | | 10 | | 83.3 |
| April | W | 13 | | 11 | | 2 | | 15.4 | |
| | N | | 23 | | 3 | | 20 | | 86.9 |
| May | W | 10 | | 8 | | 2 | | 20.0 | |
| | N | | 12 | | 4 | | 8 | | 66.7 |
| June | W | 7 | | 7 | | 0 | | 0 | |
| | N | | 14 | | 2 | | 12 | | 85.7 |
| July | W | 22 | | 15 | | 7 | | 31.8 | |
| | N | | 98 | | 6 | | 92 | | 93.9 |
| August | W | 25 | | 23 | | 2 | | 8.0 | |
| | N | | 12 | | 3 | | 9 | | 75.0 |

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| 1964 | | W | N | W | N | W | N | W | N |
| Sept. | W | 13 | | 12 | | 1 | | 7.7 | |
| | N | | 10 | | 2 | | 8 | | 80.0 |
| Oct. | W | 23 | | 20 | | 3 | | 13.0 | |
| | N | | * | | * | | 5 | | - |
| Nov. | W | 7 | | 7 | | 0 | | 0 | |
| | N | | 7 | | 1 | | 6 | | 85.7 |
| Dec. | W | 0 | | 0 | | 0 | | 0 | |
| | N | | 14 | | 0 | | 14 | | 100 |
| 1965 | | | | | | | | | |
| Jan. | W | 52 | | 24 | | 28 | | 53.8 | |
| | N | | 112 | | 12 | | 100 | | 89.3 |
| Feb. | W | 33 | | 32 | | 1 | | 3.0 | |
| | N | | 95 | | 36 | | 59 | | 62.1 |
| | | 1,828 | 1,148 | 1,465 | 214 | 363 | 939 | | |

*/ Figures not obtained; the Board accepted applications on one day in October 1964.

Perry County, Alabama

Registration Statistics
(August 17, 1964)

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 3441 | 3260 | 94.7 |
| Negro | 5202 | 365 | 7.0 |

Applications For Registration

| Year 1962 | | Total Applied W | N | Accepted W | N | Rejected W | N | Percent Rejected W | N |
|---|---|---|---|---|---|---|---|---|---|
| Nov. | W | 1 | | 1 | | 0 | | 0 | |
| | N | | 5 | | 1 | | 4 | | 80 |
| Dec. | W | 0 | | 0 | | 0 | | 0 | |
| | N | | 6 | | 1 | | 5 | | 83.3 |
| 1963 Jan. | W | 3 | | 3 | | 0 | | 0 | |
| | N | | 8 | | 0 | | 8 | | 100 |
| Feb. | W | 14 | | 13 | | 1 | | 7.1 | |
| | N | | 2 | | 0 | | 2 | | 100 |
| March | W | 7 | | 6 | | 1 | | 14.2 | |
| | N | | 1 | | 0 | | 1 | | 100 |
| April | W | 0 | | 0 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| May | W | 5 | | 5 | | 0 | | 0 | |
| | N | | 1 | | 0 | | 1 | | 100 |

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| 1963 | | W | N | W | N | W | N | W | N |
| June | W | 4 | | 4 | | 0 | | 0 | |
| | N | | 189 | | 42 | | 147 | | 77.8 |
| July | W | 4 | | 3 | | 1 | | 25 | |
| | N | | 37 | | 0 | | 37 | | 100 |
| August | W | 9 | | 8 | | 1 | | 11.1 | |
| | N | | 6 | | 0 | | 6 | | 100 |
| Sept. | W | 6 | | 6 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| Oct. | W | 21 | | 15 | | 6 | | 28.5 | |
| | N | | 73 | | 15 | | 58 | | 79.5 |
| Nov. | W | 51 | | 45 | | 6 | | 11.7 | |
| | N | | 65 | | 4 | | 61 | | 93.8 |
| Dec. | W | 28 | | 24 | | 4 | | 14.2 | |
| | N | | 20 | | 6 | | 14 | | 70 |
| 1964 | | | | | | | | | |
| Jan. | W | 48 | | 34 | | 14 | | 29.2 | |
| | N | | 62 | | 8 | | 54 | | 88.9 |
| Feb. | W | 10 | | 6 | | 4 | | 40 | |
| | N | | 15 | | 2 | | 13 | | 86.6 |
| March | W | 16 | | 12 | | 4 | | 25 | |
| | N | | 17 | | 3 | | 14 | | 82.3 |
| April | W | no report | | | | | | | |
| | N | no report | | | | | | | |
| May | W | 16 | | 13 | | 3 | | 18.7 | |
| | N | | 25 | | 10 | | 15 | | 60 |
| June | W | 3 | | 2 | | 1 | | 33.3 | |
| | N | | 16 | | 3 | | 13 | | 81.2 |
| to July 20 | W | 6 | | 6 | | 0 | | 0 | |
| | N | | 24 | | 8 | | 16 | | 66.6 |
| to August 17 | W | 8 | | 2 | | 6 | | 75 | |
| | N | | 21 | | 5 | | 16 | | 76.1 |

Wilcox County, Alabama

Registration Statistics
December 1963

|  | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 2647 | 2959 | 100* |
| Negro | 6085 | 0 | 0 |

Applications for Registration

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| 1959 | W | 47 | | 47 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | - |
| 1960 | W | 118 | | 116 | | 2 | | 1.6 | |
| | N | | 0 | | 0 | | 0 | | - |
| 1961 | W | 62 | | 62 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | - |
| 1962 | W | 97 | | 89 | | 8 | | 8.2 | |
| | N | | 0 | | 0 | | 0 | | - |
| To Oct. 17, 1963 | W | 62 | | 61 | | 1 | | 1.6 | |
| | N | | 29 | | 0 | | 29 | | 100 |
| Totals | W | 386 | | 315 | | 11* | | 2.9 | |
| | N | | 29 | | 0 | | 29 | | 100 |

*A total of 11 rejected applications filed with the Board are by persons believed to be white, 9 of them were rejected because the applicant did not possess the residency requirements to register to vote or they were not of proper age to register. One applicant was rejected for inability to complete the application and one form was marked "disqualified due to inability to complete application," but the applicant was registered to vote on the basis of this application.

Hale County, Alabama

Registration Statistics
(December 1964)

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 3594 | 3395 | 94.4 |
| Negro | 5999 | 218 | 3.6 |

## Applications For Registration

| Month and Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| 1962 Jan | W | | | 7 | | | | | |
| | N | | | | 0 | | | | |
| Feb. | W | | | 69 | | | | | |
| | N | | | | 3 | | | | |
| March | W | | | 20 | | | | | |
| | N | | | | 2 | | | | |
| April | W | | | 19 | | | | | |
| | N | | | | 1 | | | | |
| May | W | | | 2 | | | | | |
| | N | | | | 0 | | | | |
| June | W | | | 2 | | | | | |
| | N | | | | 5 | | | | |
| July | W | | | 6 | | | | | |
| | N | | | | 1 | | | | |
| August | W | | | 2 | | | | | |
| | N | | | | 3 | | | | |
| Sept. | W | | | 10 | | | | | |
| | N | | | | 1 | | | | |
| Oct. | W | | | 6 | | | | | |
| | N | | | | 0 | | | | |
| Nov. | W | | | 3 | | | | | |
| | N | | | | 1 | | | | |
| Dec. | W | | | 2 | | | | | |
| | N | | | | 0 | | | | |

Between 1954 and August 1963, 134 undated applications were rejected by the Board of Registrars; of these 120 were filed by Negroes and 14 were filed by white applicants.

| Month and Year 1963 | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| Jan. | W | | | 1 | | | | | |
| | N | | | | 1 | | | | |
| Feb. | W | | | 7 | | | | | |
| | N | | | | 4 | | | | |
| March | W | | | 8 | | | | | |
| | N | | | | 3 | | | | |
| April | W | | | 2 | | | | | |
| | N | | | | 3 | | | | |
| May | W | | | 1 | | | | | |
| | N | | | | 2 | | | | |
| June | W | | | 5 | | | | | |
| | N | | | | 3 | | | | |
| July | W | | | 3 | | | | | |
| | N | | | | 1 | | | | |
| August | W | | | 6 | | | | | |
| | N | | | | 14 | | | | |
| Sept. | W | | | 2 | | | | | |
| | N | | | | 2 | | | | |
| Oct. | W | | | 44 | | | | | |
| | N | | | | 3 | | | | |
| Nov. | W | | | 12 | | | | | |
| | N | | | | 8 | | | | |
| Dec. | W | | | 5 | | | | | |
| | N | | | | 4 | | | | |
| 1964 Jan. | W | | | 13 | | | | | |
| | N | | | | 3 | | | | |
| Feb. | W | | | 60 | | 3 1/ | | | |
| | N | | | | 11 | | 13 1/ | | |

Between September 1963 and February 11, 1964, 143 applications for which the race of the applicant has not been determined have been filed with the Board of Registrars.

1/  Rejected figures are for applications filed after February 11, 1964.

| Month and Year 1964 | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| March | W | 16 | | 14 | | 2 | | 12.5 | |
| | N | | 18 | | 2 | | 16 | | 88.8 |
| April | W | 44 | | 43 | | 1 | | 2.3 | |
| | N | | 8 | | 4 | | 4 | | 50.0 |
| May | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 7 | | 2 | | 5 | | 71.4 |
| June | W | 2 | | 2 | | 0 | | 0 | |
| | N | | 3 | | 0 | | 3 | | 100 |
| July | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 29 | | 8 | | 21 | | 72.4 |
| August | W | 6 | | 6 | | 0 | | 0 | |
| | N | | 14 | | 8 | | 6 | | 42.8 |
| Sept. | W | 6 | | 5 | | 1 | | 16.7 | |
| | N | | 10 | | 3 | | 7 | | 70.0 |
| Oct. | W | 10 | | 9 | | 1 | | 10 | |
| | N | | 12 | | 3 | | 9 | | 75.0 |
| Nov. | W | 0 | | 0 | | 0 | | -- | |
| | N | | 2 | | 0 | | 2 | | 100 |
| Dec. | W | 0 | | 0 | | 0 | | -- | |
| | N | | 3 | | 1 | | 2/ 2 | | 66.7 |
| Totals (Mar-Dec.64) | W | 106 | | 101 | | 5 | | 4.7 | |
| | N | | 106 | | 31 | | 75 | | 70.7 |

2/  In addition two forms filed by white persons and rejected by the Board are undated; and one form filed in February 1964 and one in March 1964 do not indicate race.

Choctaw County, Alabama

Registration Statistics
February 1, 1965

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 5192 | 4886 | 94.1 |
| Negro | 3982 | 284 | 7.1 |

Applications for Registration

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| Nov. 9, 1959-Dec. 31,1959 | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 3 | | 1 | | 2 | | 66.6 |
| 1960 | W | 232 | | 232 | | 0 | | 0 | |
| | N | | 20 | | 1 | | 19 | | 95.0 |
| 1961 | W | 196 | | 195 | | 1 | | .5 | |
| | N | | 115 | | 17 | | 98 | | 85.2 |
| 1962 | W | 212 | | 212 | | 0 | | 0 | |
| | N | | 118 | | 23 | | 95 | | 80.5 |
| 1963 To Feb. 5 | W | 32 | | 32 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | - |
| 1959-1963 Dates Unknown | W | 1 | | 0 | | 1 | | 100 | |
| | N | | 46 | | 0 | | 46 | | 100 |
| Feb. 5, 1963 -April 6, 1964 | W | 393 | | 385 | | 8 | | 2.0 | |
| | N | | 98 | | 35 | | 63 | | 64.2 |
| April 20,1964 -Feb. 1,1965 | W | 111 | | 108 | | 3 | | 2.7 | |
| | N | | 100 | | 29 | | 71 | | 71.0 |
| Totals | W | 1188 | | 1175 | | 13 | | 1.2 | |
| | N | | 500 | | 106 | | 394 | | 78.8 |

Marengo County, Alabama

Persons Registered To Vote

| Year | White | Negro |
|------|-------|-------|
| Feb., 1954 ) | | |
| 1955 ) | 392 | 98 |
| 1956 | 328 | 2 |
| 1957 | 118 | 0 |
| 1958 | 252 | 0 |
| 1959 | 214 | 1 |
| 1960 | 457 | 5 |
| 1961 | 57 | 10 |
| Jan. and | 103 | 1 |
| Feb. 1962 | - | - |
| Totals | 1,921 | 117 |

Applications for Registration

| Month and Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|----------------|---|------|----|------|----|------|----|------|----|
| | | W | N | W | N | W | N | W | N |
| March, 1962 | W | 145 | | 145 | | 0 | | 0 | |
| -Dec. 1962 | N | | 66 | | 14 | | 52 | | 78.8 |
| Jan. 1963 | W | 20 | | 20 | | 0 | | 0 | |
| | N | | 70 | | 32 | | 38 | | 54.3 |
| Feb. 1963 | W | 43 | | 43 | | 0 | | 0 | |
| -April 1963 | N | | 27 | | 13 | | 14 | | 51.8 |
| May 1963 | W | 3 | | 3 | | 0 | | 0 | |
| | N | | 13 | | 12 | | 1 | | 77.7 |
| June 1963 | W | 5 | | 5 | | 0 | | 0 | |
| | N | | 32 | | 24 | | 8 | | 25.0 |
| July 1963 | W | 23 | | 23 | | 0 | | 0 | |
| | N | | 99 | | 19 | | 70 | | 70.1 |
| August 1963 | W | 4 | | 4 | | 0 | | 0 | |
| | N | | 48 | | 43 | | 5 | | 10.4 |
| Sept. 1963 | W | 21 | | 21 | | 0 | | 0 | |
| | N | | 16 | | 13 | | 3 | | 18.7 |

| Month and Year | | Total Applied W | N | Accepted W | N | Rejected W | N | Percent Rejected W | N |
|---|---|---|---|---|---|---|---|---|---|
| Oct. 1963 | W | 118 | | 118 | | 0 | | 0 | |
| | N | | 31 | | 13 | | 18 | | 58.1 |
| Nov. 1963 | W | 64 | | 63 | | 1 | | 1.6 | |
| | N | | 20 | | 6 | | 14 | | 70.0 |
| Dec. 1963 | W | 10 | | 10 | | 0 | | 0 | |
| | N | | 3 | | 3 | | 0 | | 0 |
| Jan. 1964 | W | 96 | | 95 | | 1 | | 1.0 | |
| | N | | 20 | | 19 | | 1 | | 5.0 |
| Feb. 1964 | W | 64 | | 64 | | 0 | | 0 | |
| | N | | 9 | | 2 | | 7 | | 77.7 |
| March 1964 | W | 22 | | 21 | | 1 | | 4.5 | |
| | N | | 1 | | 1 | | 0 | | 0 |
| April 1964 | W | 37 | | 36 | | 1 | | 2.6 | |
| | N | | 8 | | 2 | | 6 | | 75.0 |
| May 1964 | W | 0 | | 0 | | 0 | | - | |
| | N | | 0 | | 0 | | 0 | | - |
| June 1964 | W | 10 | | 10 | | 0 | | 0 | |
| | N | | 7 | | 3 | | 4 | | 59.1 |
| July 1964 | W | 12 | | 12 | | 0 | | 0 | |
| | N | | 111 | | 65 | | 46 | | 45.5 |
| August 1964 | W | 14 | | 14 | | 0 | | 0 | |
| | N | | 28 | | 19 | | 9 | | 32.1 |
| Sept. 1964 | W | 36 | | 29 | | 7 | | 19.5 | |
| | N | | 10 | | 0 | | 10 | | 100 |
| Oct. 1964 | W | 64 | | 49 | | 15 | | 23.4 | |
| | N | | 5 | | 0 | | 5 | | 100 |
| Nov. 1964 | W | 0 | | 0 | | 0 | | - | |
| | N | | 0 | | 0 | | 0 | | - |
| Dec. 1964 | W | 2 | | 2 | | 0 | | 0 | |
| | N | | 1 | | 1 | | 0 | | 0 |
| Jan. 1965 | W | 1 | | 1 | | 0 | | 0 | |
| | N | | 4 | | 0 | | 4 | | 100 |
| Feb. 1965 | W | 16 | | 11 | | 5 | | 31.3 | |
| | N | | 3 | | 0 | | 3 | | 100 |
| Totals | W | 830 | | 799 | | 31 | | 3.7 | |
| | N | | 622 | | 304 | | 318 | | 51.1 |